UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:18cv63173

JERRY PAUL,

      Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC.,

      Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

      Plaintiff JERRY PAUL ("Plaintiff"), by and through undersigned counsel, seeks redress for the illegal practices of Defendant MIDLAND CREDIT MANAGEMENT, INC. ("MCM"), *to wit*, for MCM's violations of 15 U.S.C §1692, the Fair Debt Collection Practices Act, and Florida Statute §559.551, the Florida Consumer Collection Practices Act, and in support thereof, Plaintiff states the following:

**NATURE OF ACTION**

**I.     *THE FAIR DEBT COLLECTION PRACTICES ACT***

      1.     The Fair Debt Collection Practices Act (the "FDCPA") is a series of statutes which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. §1692. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure [sic] that debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e).

2.      In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. §1692(b).

3.      The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collection and provides for specific consumer rights. 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

4.      Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of §1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to:

> (2) The false representation of [] (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> …
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §1692e.

5.     Section 1692f of the FDCPA states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. *See* LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010) ("[a]n act or practice is deceptive or unfair if it has the tendency or capacity to deceive."). The eight subsections of §1692f set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1).

6.     Section 1692g of the FDCPA requires debt collectors to make certain disclosures, and/or provide consumers with certain information, depending on the circumstances. The rights and obligations established by section 1692g were considered by the Senate to be a "significant feature" of the Act. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4. In particular, §1692g mandates, inter alia, that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or

> judgment will be mailed to the consumer by the debt
> collector; and
>
> (5) a statement that, upon the consumer's written request
> within the thirty-day period, the debt collector will provide
> the consumer with the name and address of the original
> creditor, if different from the current creditor.

15 U.S.C. §1692g.

## II.   *THE FLORIDA CONSUMER COLLECTION PRACTICES ACT*

7.   The Florida Consumer Collection Practices Act (the "FCCPA") is "a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." Harris v. Beneficial Finance Company of Jacksonville, 338 So. 2d 196, 200-201 (Fla 1976). In 1993, the FCCPA was enacted to complement the FDCPA, and, as of present-day, the FCCPA continues to effectuate this goal by otherwise furthering the protections and prohibitions of the FDCPA. *See* Bianchi v. Bronson & Migliaccio, LLP, 2011 WL 379115 (S.D. Fla. Feb. 2, 2011) (stating, "[t]he Florida legislature through the FCCPA expresses its intent that the FCCPA be read as providing regulations that complement the FDCPA. Specifically, the FCCPA notes that any discrepancy between the two acts should be construed as to provide the consumer (or debtor) the greatest protection." (citations omitted)).

8.   Section 559.72, Fla. Stat., of the FCCPA contains nineteen subsections and otherwise codifies an extensive list of acts and/or omissions that the FDCPA does not explicitly prohibit. Accordingly, in collecting consumer debts, pursuant to the FCCPA no person shall: "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. §559.72(9).

9.     The FCCPA governs the collection of debts with more scrutiny and specificity than that of the FDCPA, whereby, in its totality, not only does the FCCPA codify additional conduct as explicitly unlawful – but most critically – the FCCPA applies to individuals and/or entities not otherwise regulated by the FDCPA. *See* In re Hathcock, 437 B.R. 696, 704 (Bankr. M.D. Fla. 2010) ("[u]nlike the FDCPA, the [FCCPA] applies not only to debt collectors but to *any persons collecting a consumer debt*." (emphasis added)); *See, e.g.*, Heard v. Mathis, 344 So. 2d 651, 654 (Fla. 1st DCA 1977) (holding the FCCPA applied to "a private individual making an oral, non-interest bearing loan to a friend."); Schauer v. General Motors Acceptance Corp., 819 So. 2d 809, 812 n. 1 (Fla. 4th DCA 2002) (creditors are not exempt from FCCPA liability, whether it be direct or vicarious).

10.     Furthermore, in situations involving an assigned consumer debt, the FCCPA requires specialized notice above-and-beyond that required by the FDCPA, whereby such notice must precede any debt collection activates. *See* Fla. Sta. §559.715 ("the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt." (emphasis added)).

11.     As set forth in more detail below, MCM violated the aforementioned portions the FDCPA and FCCPA. Plaintiff now seeks damages and/or injunctive relief for the same.

## JURISDICTION AND VENUE

12.     Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C §1331, and 28 U.S.C §1337.

13.     Supplemental jurisdiction exists for the FCCPA claims under to 28 U.S.C. §1367.

14.     Venue in this District is proper because Plaintiff resides here, MCM transacts business here, and the complained conduct of MCM occurred here.

## PARTIES

15.     Plaintiff is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

16.     MCM is a Kansas corporation, with its principal place of business located in San Diego, California.

17.     MCM engages in interstate commerce by regularly using telephone and mail in a business whose principal purpose is the collection of debts.

18.     At all times material hereto, MCM has been registered with the Florida Office of Financial Regulation as "Consumer Collection Agency," license no. CCA0900916. A copy of the License Search Results offered by the Florida Office of Financial Regulation is attached hereto as Exhibit "A."

19.     At all times material hereto, MCM has been a corporation subject to the FCCPA. *See*, *e.g.,* Cook v. Blazer Fin. Services, Inc., 332 So. 2d 677, 679 (Fla. 1st Dist. App. 1976) (citing Fla. Stat. §1.01(3)).

## FACTUAL ALLEGATIONS

20.     The debt at issue (the "Consumer Debt") is the amount Plaintiff allegedly owes on an unsecured line of credit Plaintiff had maintained with the original creditor, Capital One Bank (USA) N.A. ("Capital One").

21.     The current creditor of the Consumer Debt is Midland Funding, LLC.

22.     The unsecured line of credit (the "Capital One Card") was held by Plaintiff personally, as a consumer, for the purchase of goods and services.

23.     The Consumer Debt is the result of Plaintiff having utilized the Capital One Card to purchase goods and services to Plaintiff's own benefit, as well as the benefit of Plaintiff's family and members of Plaintiff's household.

24.     The Consumer Debt is a "debt" governed by the FDCPA and FCCPA. *See* 15 U.S.C §1692a(5); Fla. Stat. §559.55(6).

25.     Plaintiff is a "consumer" within the meaning of the FDCPA. *See* 15 U.S.C §1692a(3).

26.     MCM is a "debt collector" as defined by the FDCPA and FCCPA. *See* 15 U.S.C §1692a(6); Fla. Stat. §559.55(7).

27.     Midland Funding, LLC is the "assignee" of the Consumer Debt as used by Fla. Stat. § 559.715.

28.     On or about December 12, 2018, MCM sent a collection letter to Plaintiff (the "Collection Letter") in an attempt to collect the Consumer Debt. A copy of the Collection Letter is attached hereto as Exhibit "B."

29.     On information and belief, the Collection Letter was the first and only communication Plaintiff had received from MCM pertaining to the Consumer Debt.

30.     The Collection Letter was MCM's initial communication with Plaintiff in connection with the collection of the Consumer Debt.

31.     MCM engaged in conduct constituting "*any action to collect [a] debt*," *see* Fla. Stat. § 559.715, by dispatching the Collection Letter to Plaintiff.

32.     Plaintiff has never been notified in writing that the original creditor, had assigned and/or sold the Consumer Debt to *any* entity.

33.     Plaintiff has never been notified, in writing, that MCM had been assigned and/or purchased the Consumer Debt from *any entity*.

34.     The Collection Letter represents the *first* written notice informing Plaintiff that Capital One is not the current creditor of the debt.

35.     The Collection Letter represents the *first* written notice informing Plaintiff that MCM is the current creditor of the debt.

36.     In the Collection Letter, MCM makes the following statement: "*The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it.*" *See* Collection Letter (emphasis added).

37.     Plaintiff defaulted on the Consumer Debt more than five years ago and Plaintiff has made no payment on or toward the Consumer Debt since defaulting.

38.     The Consumer Debt is a time-barred debt. *See* Fla. Stat. §95.11(2).

39.     Florida law prohibits MCM from commencing any legal action to collect the Consumer Debt from Plaintiff. Id.

40.     The Collection Letter requests that Plaintiff enter into a payment plan, *to wit*, the so-labeled "**Pre-Approved Discount Program**" contained in the Collection Letter, which requires Plaintiff to make a series of partial payments towards what the Collection Letter identifies as the "**Current Balance**" on the Consumer Debt.

41.     The payment plans offered to Plaintiff in the Collection Letter proport to "**SAVE**" Plaintiff money.

42.     MCM could lawfully sue to collect the Consumer Debt from Plaintiff if Plaintiff agreed to either "discount program" offered in Collection Letter and subsequently defaulted on such "discount program." *See* Collection Letter.

43.     The Collection Letter does not advise Plaintiff that Consumer Debt was time-barred or that making a partial payment towards the Consumer Debt could revive the statute of limitations.

44.     The Collection Letter does not advise Plaintiff that if Plaintiff were to agree to either "discount program" offered in the Collection Letter and subsequently defaulted on such "saving plan," MCM would could then sue Plaintiff for the Consumer Debt.

<u>**VIOLATION OF THE FDCPA AND FCCPA**</u>

*I.     RELATIONSHIP BETWEEN THE FDCPA & FCCPA*

45.     In Florida, consumer debt collection practices are regulated by both the FCCPA and the FDCPA. "Both acts generally apply to the same types of conduct, and Florida courts must give great weight to federal interpretations of the FDCPA when interpreting and applying the FDCPA." <u>Read v. MFP, Inc</u>., 85 So.3d 1151, 1153 (Fla. 2nd DCA 2012). "Congress enacted the FDCPA after noting abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." (internal quotations omitted). <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450 (3rd Cir. 2006). Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." <u>Id</u>. at 453 (quoting 15 U.S.C. §1692(a). Because the FDCPA is a remedial statute, "we construe its language broadly, as to affect its purpose." <u>Id</u>. The FDCPA restricts the time and places a debt collector may contact a consumer and limits third party contacts. These restrictions, along with others, protect the consumer's right to privacy and the security of the consumer's relationship with third parties, including attorneys, co-workers, and employers. This was considered an "extremely important protection." S. Rep. No. 382, 95th Cong., 1st Sess. 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

46.     Notably, "[t]he FDCPA establishes a strict liability standard; a consumer need not show an intentional violation of the Act by a debt collector to be entitled to damages." Drossin v. Nat'l Action Fin. Servs., 641 F.Supp.2d 1314 (S.D. Fla. 2009). "A single violation of the Act is sufficient to subject a debt collector to liability under the Act." Id. at 1316. Similarly, the FCCPA "is to be construed in a manner that is protective of the consumer." Laughlin v. Household Bank, LTD., 969 So.2d 509, 513 (Fla. 1st DCA 2007). In fact, the FCCPA "further defined and protected an individual's right of privacy" in addition to the protections of the FDCPA. Id. at 512. Importantly, the FCCPA is "in addition to the requirements and regulations of the [FDCPA]. In the event of any inconsistency between any provision of [the FCCPA] and the [FDCPA], the provision which is more protective of the consumer or debtor shall prevail. Fla. Stat. §559.552. Finally, in ultimately asserting a consumer's civil remedies under the FCCPA, "due consideration and great weight shall be given to the interpretations of... federal counts related to the [FDCPA]." Fla. Stat., §559.77(5).

## II.      THE LEAST SOPHISTICATED CONSUMER STANDARD

47.     The Eleventh Circuit has adopted the "least sophisticated consumer" standard in reviewing alleged violations of the FDCPA. *See* Beeders v. Gulf Coast Collection Bureau, 796 F.Supp.2d 1335, 1338; Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985). The purpose of the least sophisticated consumer standard is to ensure the protection of the gullible as well as the shrewd. *See* LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. Fla. 2010). "A court applies this objective standard... to protect consumers against deceptive debt collection practices and to protect debt collectors from unreasonable constructions of their communications." Green v. Douglas, Knight & Assocs. (In re Cheaves), 439 B.R. 220 (Bankr. M.D. Fla. 2010).

48.     The least sophisticated consumer standard is similarly applied in determining violations of the FCCPA. *See, e.g.,* Michael v. HOVG, LLC, 2017 WL 129111, at *5 (S.D. Fla. Jan. 10, 2017) (finding that Plaintiff successfully stated a claim for under Fla. Stat. Ann. § 559.72(9) because "the least sophisticated consumer may plausibly believe that the [collection letter] 'threaten[s] to enforce a debt' or 'assert[s] the existence of some other legal right.'"); Bank v. Schmidt, 124 So. 3d 1039 (Fla. Dist. Ct. App. 2013) (affirming class certification which the lower court premised on least sophisticated consumer standard governing the FCCPA); Green, 439 B.R. 220 (discussing the similar goals of the FCCPA and FDCPA and applying the least-sophisticated consumer standard to determine whether a collection letter violated the FCCPA).

## III.     *ESTABLISHING A CLAIM FOR FDCPA AND/OR FCCPA VIOLATIONS*

49.     The FDCPA and FCCPA "have certain parallels, as both relate to consumer protection against creditors, and include nearly identical definitions of 'communication,' 'debt,' and 'debt collector.' Kinlock v. Wells Fargo Bank, N.A., 636 Fed. Appx. 785, 787 (11th Cir. 2016) (citations omitted). Thus, to establish a claim under the FDCPA and FCCPA are largely the same.

50.     To establish a claim under the FDCPA, the plaintiff must show: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Pescatrice v. Orovitz, P.A., 539 F.Supp.2d 1375, 1378 (S.D.Fla.2008).

51.     Unsurprisingly, "[t]he elements necessary to plead a claim under the FCCPA are similar but distinguishable from the elements of establishing a claim under the FDCPA." Deutsche Bank Nat. Trust Co. v. Foxx, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013). "The first prong is substantially identical to the FDCPA, as the FCCPA only applies to consumer debt [and] t]he second prong [only] differs from the FDCPA in that the FCCPA prohibits acts of 'persons' and,

accordingly, is not limited to 'debt collectors.'" <u>Bacelli v. MFP, Inc.</u>, 729 F.Supp.2d 1328, 1335 (M.D.Fla.2010). "The third prong requires an act or omission prohibited by the FCCPA. In addition to these elements, several subsections of §559.72 require an allegation of knowledge or intent by the defendant in order to state a cause of action." <u>Foxx</u>, 971 F. Supp. 2d 1106, 1114 (citing <u>Reese v. JPMorgan Chase & Co.</u>, 686 F.Supp.2d 1291, 1309 (S.D.Fla.2009) ("To plead a FCCPA claim, a party must allege knowledge or intent by the debt collector in order to state a cause of action.")).

## COUNT I.
## <u>VIOLATION OF THE FDCPA</u>

52.     Plaintiff incorporates by reference paragraphs 20-51 of this Complaint as though fully stated herein.

53.     As a result of MCM's forgoing FDCPA violations, Plaintiff has suffered actual damages, including but not limited to mental suffering, anguish, loss of income, and personal and/or financial credibility, whereby Plaintiff is entitled to relief for such, in addition to statutory damages, attorney's fee and costs.

***VIOLATION OF THE FDCPA – No. 1***

54.     MCM violated § 1692e and 1692f of the FDCPA because the Collection Letter MCM dispatched to Plaintiff, in light of the least sophisticated consumer standard, was a deceptive. misleading, unfair, and unconscionable attempt to collect the time-barred debt from Plaintiff.

55.     First the Collection Letter *does not* inform the least sophisticated consumer that MCM **cannot** sue to collect the time-barred Consumer Debt. The statement: "*the law limits how long you can be sued on a debt*" is overly vague (e.g.: what "*law*;" what is meant by "*limits*;" how long is "*long*;" and which "*debts*?") ambiguous in relevance (i.e., the Collection Letter *does not state* the Consumer Debt *is* a debt which the "law" has "limited" the least sophisticated consumer

from being "sued" on) and obscurely placed at the bottom of the Collection Letter in small, dismissive font. <u>Buchanan v. Northland Group, Inc.</u>, 776 F.3d 393, 399 (6th Cir. 2015) (reversing dismissal of FDCPA claim involving a letter that used the term "settlement offer" and stating, "The other problem with the letter is that an unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. Not true: Some payment is worse than no payment. The general rule in [the state] is that partial payment restarts the statute-of-limitations clock, giving the creditor a new opportunity to sue for the full debt. As a result, paying anything less than the settlement offer exposes a debtor to substantial new risk.") (internal citation omitted);

56.    Instead of clarity, however, MCM follows with: "*because of the age of the age of your debt, we will not sue you for it*" as if MCM was ***choosing*** not to sue even though – in reality – MCM **cannot** sue to collect the time-barred Consumer Debt. *See* <u>Smothers v. Midland Credit Mgmt., Inc.</u>, 2016 WL 7485686, at *3 (D. Kan. Dec. 29, 2016) ("[d]efendant's promise not to sue does not impact the legal effect of making a partial payment because *the revival of a statute of limitations is statutory – not a decision made by a debt collector*." (emphasis added)).

57.    Second, the Collection Letter *does not* inform the least sophisticated consumer that if the consumer made, or even agreed to make, a partial payment towards Consumer Debt, the consumer could restart the clock on the long-expired statute of limitations, in effect brining a long-dead debt back to life. <u>Smothers</u>, 2016 WL 7485686, at *5 ("The least sophisticated consumer most certainly would not be aware that making a payment could make the debt judicially enforceable again—particularly when the collector tells the consumer that the law limits how long she can be sued and that the collector will not sue. Explaining to the consumer all of the benefits she will receive by making payments on a stale debt, while neglecting to address [state] law that

would make the debt judicially enforceable again, is a misrepresentation of the character and legal status of the debt under the FDCPA. The court determines as a matter of law that defendant violated the FDCPA by sending the letter to plaintiff.").

58.     Further, MCM builds upon its deceptive schedule, after having willfully blinded the least sophisticated consumer from corner-stone information, MCM nefariously offers a so-called savings plan to the consumer which, in reality, saves the consumer *nothing*. Any amount of the Consumer Debt paid by Plaintiff, no matter how small, ***will always cost more than paying nothing***. In fact, the savings plan only saves *one* thing – it *saves* is the Consumer Debt from remaining dead, in that, it *saves* the debt (of which MCM *now* owns) from the iron-clad protection of the statute of limitations. McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1021 (7th Cir. 2014) (addressing a letter that offered to "settle" a debt and stating, "The fact that both [ ] letters contained an offer of settlement makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers only reinforced the misleading impression that the debt was legally enforceable.").

59.     In a recent decision, the Seventh Circuit issued its decision in Pantoja v. Portfolio Recovery Assocs., LLC, 2017 WL 1160902 (7th Cir. Mar. 29, 2017) (cert. denied). whereby the court directly addressed the ***same facts***, the ***same claim***, which Plaintiff now brings before this Court in search of relief.

60.     In relevant part, the Pantoja court encapsulated the matter before it as follows:

> The point of controversy here concerns efforts to collect consumer debts on which the statute of limitations has expired when the effort does *not* involve filing or threatening a lawsuit. Compare McMahon v. LVNV Funding, LLC, 744 F.3d at 1020 (7th Cir. 2014) (dunning letters offering to "settle" time-barred debts could violate Act by leading debtors to believe the debts were legally enforceable);

> Daugherty v. Convergent Outsourcing, Inc., 836 F.3d 507, 509 (5th Cir. 2016) (effort to collect is not automatically unlawful, but letter violates FDCPA if it could lead unsophisticated consumer to believe her time-barred debt is legally enforceable); and Buchanan v. Northland Group, Inc., 776 F.3d 393, 397 (6th Cir. 2015) (reversing dismissal on pleadings; offer to settle time-barred debt could violate Act by failing to disclose that suit would be time-barred or that partial payment would remove statute of limitations bar), with Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 33 (3d Cir. 2011) holding that attempt to collect a time-barred debt was permissible if litigation not threatened), and Freyermuth v. Credit Bureau Services, Inc., 248 F.3d 767, 771 (8th Cir. 2001) (same)

Pantoja, 2017 WL 1160902 at *2. In addressing this issue, the court – without provocation – opined that "the opportunities for mischief and deception, particularly when sophisticated parties aim carefully crafted messages at unsophisticated consumers, may well be so great that the better approach is simply to find that any such efforts violate the FDCPA's prohibitions on deceptive or misleading means to collect debts, § 1692e, and on 'unfair or unconscionable means' to attempt to collect debts, § 1692f." Id. at 3. Though, the court noted that it could "decide [the] case on narrower grounds," as the "plaintiff [did] not argue for that broad rule."

61.     In contrast to the matter at hand, make no mistake, Plaintiff *urges* for the implementation of a broad prohibition on the collection of time-barred debt. No matter how regulated or restrictive the practice becomes, so long as the collection of time-barred consumer debt is permissible, debt collectors will develop practices and techniques to circumvent such restrictions. Collecting time-barred debts offers debt collectors too alluring of an opportunity. A time-barred debt can be purchased for a fraction of its face value, thereby making the potential profit so high that the punishment for engaging in deceptive and/or unfair collection practices, i.e., being sued by the debtor, is an easily tolerable cost-of-business for debt collectors.

62.     Shifting back to Pantoja, the Seventh Circuit, after having served both the facts and law, affirmed the district court's summary judgment for the plaintiff, stating:

> We agree with the district court's two reasons for finding that the dunning letter here was deceptive. First, the letter does not even hint, let alone make clear to the recipient, that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations. Second, the letter did not make clear to the recipient that the law prohibits the collector from suing to collect this old debt. Either is sufficient reason to affirm summary judgment for the plaintiff.

Pantoja, 2017 WL 1160902 at *2

63.     Accordingly, MCM violated failed § 1692e of the FDCPA by failing to sufficiently inform the least sophisticated consumer that the Consumer Debt was *absolutely* time-barred, and by failing inform the least sophisticated consumer, whatsoever, that the Consumer Debt can be revived if, *for example*, the consumer agreed to the "**Pre-Approved Discount Program**" offered in the Collection Letter.

## *VIOLATION OF THE FDCPA – No. 2*

64.     MCM violated §1692e(10) of the FDCPA by utilizing false representations and/or deceptive means in an attempt to collect the Consumer Debt.

65.     Here, MCM offers the least sophisticated consumer an exceedingly nefarious "Pre-Approved Discount Program" which seeks to have the least sophisticated consumer make a partial payment on the time-barred consumer debt. MCM repeatedly uses *save* in reference to the benefits such an offer will bestow upon the least sophisticated consumer; however, what MCM *fails to mention* is that agreeing to make a partial payment will hold Plaintiff liable for MCM for the *full amount* if Plaintiff defaulted on the savings plan.  McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1021 (7th Cir. 2014) (wherein the Seventh Circuit recognized that, in these circumstances, such offers "make[ ] things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount.").

66.     Accordingly, the savings plan MCM provides in the Collection Letter can only be understood as an attempt to deceive the least sophisticated consumer into reviving a long-time barred debt, as the only consumer capable of finding *any* benefit from such a "savings plan" is the uninformed consumer.

### *VIOLATION OF THE FDCPA – No. 3*

67.     MCM violated §1692f(1) of the FDCPA by attempting to collect the Consumer Debt, by and through the Collection Letter, despite having no lawful authority to seek the collection of such because the Consumer Debt was assigned and Plaintiff did not receive proper notice thereof.

68.     The plain language of § 559.715 of the FCCPA. provides that "the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt." Fla. Stat. § 559.715.

69.     State courts across Florida, both county and circuit, have repeatedly held that § 559.715 imposes a condition precedent on the collection of a debt. *See* Cach v. Solano, 2014 Fla. Cir. LEXIS 1826 (Fla. 6th Cir. Ct. Feb. 19, 2014) (holding that "the language of the statute creates a condition precedent"); UMLIC-VP, LLC v. Levine, 10 Fla. L. Weekly Supp. 336a (15th Cir. Ct. 2003) (interpreting the statute as imposing a condition precedent on the collection of assigned debt); LVNV Funding, LLC v. Scheitinger, 20 Fla. L. Weekly Supp. 278a (Pinellas Cty. Ct. 2012); Equable Ascent Fin., LLC v. Davis, 19 Fla. L. Weekly Supp. 592b (Orange Cty. Ct. 2011); *see also* Metro. Cas. Ins. Co. v. Tepper, 2 So. 3d 209, 213-15 (Fla. 2009) (discussing principles of statutory construction and finding that "the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless").

70.     In <u>Wright v. Dyck-O'Neal, Inc.</u>, 2015 WL 6560444, at 3 (M.D. Fla. Oct. 27, 2015), the Middle District of Florida found that plaintiffs successfully stated a claim for relief under the FDCPA, wherein the plaintiffs alleged that the ***debt collector*** violated the FDCPA by failing to provide notice of assignment at least thirty (30) days prior to plaintiffs' receipt of the collection letters the debt collector sent ***on behalf of the assignee-creditor***. In relevant part, the court stated:

> [A] 'violation of the FCCPA may support a federal cause of action under the FDCPA' even if the underlying FCCPA violation does not provide for a private right of action." *Schmidt*, 2015 WL 248635, at *3 (quoting <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1190 (11 th Cir.2010)). The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. As stated, Plaintiffs argue that once the debts were assigned to Dyck–O'Neal, Defendant Consuegra, as Dyck–O'Neal's agent, was prohibited from attempting to collect the debt until thirty days after it provided them with a notice of assignment. According to Plaintiffs, they were never notified of the assignment, and thus the dunning letters were false and misleading because Defendants were not permitted to collect the debt at all. If proven, these allegations would permit Plaintiffs to recover under the FDCPA.

<u>Wright</u>, 2015 WL 6560444 at 3 (citing <u>Schmidt</u>, 2015 WL 248635, at *3 (debt collector potentially violated FDCPA by attempting to collect debt without first satisfying the FCCPA's registration requirement even though no private right of action existed for the underlying failure to register)).

71.     Here, the Collection Letter marks MCM's first and only written communication to Plaintiff that involved the Consumer Debt. With that said, Plaintiff did not receive *any* written notice indicating that the Consumer Debt had been assigned to MCM in compliance with Fla. Stat. §559.715 – and because of this – by and through the Collection Letter, MCM violated f(1) of the FDCPA, as MCM failed perform the necessary condition precedent to lawfully collect the Consumer Debt from Plaintiff.

***VIOLATION OF THE FDCPA – No. 4***

72.     Section 1692g(a) of the FDCPA by failing to notify Plaintiff of the information and/or rights §1692g(a)(3)-(5) requires MCM to adequately disclose to Plaintiff, if not during MCM's initial communication with Plaintiff, then in *in writing* within five (5) days thereof.

73.     Here, the Collection Letter was the first communication Plaintiff had received from MCM. Plaintiff was not notified of the information required by §1692g(a)(3)-(5) within the Collection Letter  or within five (5) days of having received the Collection Letter. Simply put, by failing provide Plaintiff with the disclosures mandated by the FDCPA, specifically, those information set forth under §1692g(a)(3)-(5) of the FDCPA, MCM has violated the FDCPA.

**COUNT II.**
**VIOLATION OF THE FCCPA**

74.     Plaintiff incorporates by reference paragraphs 20-51 of this Complaint as though fully stated herein.

75.     As a result of MCM's forgoing FCCPA violation, Plaintiff has suffered actual damages, including but not limited to mental suffering, anguish, loss of income, and personal and/or financial credibility, whereby Plaintiff is entitled to relief for such, in addition to statutory damages, attorney's fee and costs.

***VIOLATION OF THE FCCPA – No. 1***

76.     MCM violated Fla. Stat.  §559.72(9) by knowingly seeking the collection of the Consumer Debt without the authority necessary to lawfully seek the collection thereof.

77.     As set forth in more detail above, the Consumer Debt is a debt governed by the FDCPA, and thus, to lawfully seek the collection of the Consumer Debt, MCM must comply with the FDCPA – in particular – section 1692g(a). As set forth in more detail above, MCM violated §1692g(a), and as a result, MCM was stripped of any authority it *may have* had to *lawfully* seek

the collection of the Consumer Debt. Thus, by failing to provide such notice/disclosures to Plaintiff in conformance with 15 U.S.C. §1692g(a), MCM knew that, by dispatching the Collection Letter to Plaintiff, it (MCM) was unlawfully seeking to collect the Consumer Debt from Plaintiff.

## DEMAND FOR JURY TRIAL

78.     Plaintiff respectfully demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against MCM, awarding Plaintiff the following relief:

(a)     Statutory and actual damages, as provided under 15 U.S.C. §1692k, for the FDCPA violations committed by MCM in attempting to collect the Consumer Debt.

(b)     Statutory and actual damages, as provided under Fla. Stat. §559.77(2), for the FCCPA violation committed by MCM in attempting to collect the Consumer Debt from Plaintiff.

(c)     An injunction prohibiting MCM from engaging in further collection activities directed at Plaintiff that are in violation of the FCCPA;

(d)     Costs and reasonable attorneys' fees as provided by both 15 U.S.C. §1692k and Fla. Stat. §559.77(2); and

(e)     Any other relief that this Court deems appropriate and just under the circumstances.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

DATED: December 29, 2018

Respectfully Submitted,

 /s/ Jibrael S. Hindi                                .
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:    jibrael@jibraellaw.com
THE LAW OFFICES OF JIBRAEL S. HINDI
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:    954-907-1136
Fax:       855-529-9540